HEARD APRIL TERM, 1873.

## VISANSKA *vs.* BRADLEY.

A lien under the Act to secure advances for agricultural purposes, given by a tenant of rented land, has preference over a prior contract to pay the landlord, for the use of the land from the first makings of the crop, one-fourth of all that is made.

The right of seizure under a lien to secure advances for agricultural purposes may be made elsewhere than on the land where the crop is made.

Where the trial is by the Court, the Code of Procedure requires that the decision should contain a statement of the facts found and the conclusions of law separately.

BEFORE COOKE, J., AT ABBEVILLE, FEBRUARY TERM, 1873.

The appeal in this case was heard upon a brief, which is as follows :

" The issues in this action came on for trial before the Hon. T. H. Cooke, Judge of the Eighth Judicial Circuit of said State, at a Circuit Court, held at Abbeville Court House, in and for the County of Abbeville, on the 27th February, 1873. It was agreed that the matter should be submitted for the decision of the presiding Judge; and the plaintiff by his counsel opened the case.

" To maintain the issues on his part, the plaintiff called as a witness :

" Samuel Link, who, being sworn, said : That he is an agent of the plaintiff; that he rented to Wm. Sprouse a parcel of land near Hopewell Church, in Abbeville County, of the plaintiff's. The contract of renting was made about the end of A. D. 1870, or beginning of A. D. 1871. Sprouse was in possession under this contract, which was made out in writing, but never signed. The contract was that plaintiff should have one-fourth of all that was made. Sprouse was to pay plaintiff from the first makings of the crop. He made a crop of corn, cotton, &c., but did not give plaintiff according to contract—carried cotton to Mr. Parker's gin—no part of it got by plaintiff. Witness, late in the fall season, went to Sprouse, who, after some trouble, gave him as part share due plaintiff, 1,100 lbs. seed cotton. Witness carried this to Thos. Thomson's gin. It was thrown in a pile with share cotton due by John Thomson to plaintiff. John Thomson's and Sprouse's share cotton was ginned together—there were two bales of it. When one bale was ginned and packed, and the second bale was ginned except about two baskets full of seed cotton, defendant came with Jesse Bradley to seize cotton under a lien which was

said to have been given by Sprouse. Witness thinks seizure was not made, but it was agreed to refer to Thos. Thomson, at the Court House, who had the best right to the bale of cotton, and a day was fixed. On the day fixed, witness carried the two bales to Abbeville Court House—did not see W. K. Bradley, according to appointment, but knew some of the Bradleys were at the village— waited in the street until he was tired, and wanted to go home, so he could get there before night—waited fully two hours after time appointed, and the defendant not appearing according to agreement, he did what Mr. Winstock advised him—he carried the cotton (two bales) to depot and unloaded it there, and went home.

"Moses Winstock, sworn for plaintiff (father-in-law of plaintiff): Went to Abbeville Court House on day fixed by Mr. Link—saw Mr. Link and the cotton—waited until long after the time fixed. Mr. Link being tired of waiting, advised him to carry cotton to depot—Mr. Link did so, and witness had cotton, when unloaded, shipped or directed to plaintiff in Columbia, and took agent's receipt therefor. Sheriff, after this, seized one bale under the defendant's lien, and took it into his possession and away from the depot. Has not the cotton receipts with him.

"The plaintiff closed.

"The defendant, by his counsel, then opened his case; and to maintain the issues on his part, called as a witness:

"Henry S. Cason, late Sheriff, who, being sworn, said: He seized as Sheriff a bale of cotton, under lien of defendant against Sprouse, at depot—had it in his possession in storage—with consent of parties, or their attorneys, there being a dispute about the cotton, he sold the cotton to save storage, danger from fire, &c.—sold for about ———— cents per pound, the then price of cotton. Was of the impression he paid the proceeds of sale to defendant—may not have done so—is not sure about it—books in office burnt, &c.

"Defendant, Bradley, sworn, says: About February, or in the early part of A. D. 1871, William Sprouse gave him a lien upon his entire crop, which was to be made that year on the land rented from plaintiff, near Hopewell Church. The lien was in amount for $250 in gold. Witness furnished supplies to Sprouse. The agricultural lien was left with the Sheriff when the levy was made at the Court House, and is believed to have been burnt with the other papers in Sheriff's office. No part of lien paid. It was duly recorded. Witness went with Jesse Bradley to Thomas Thomson's

gin house to seize cotton under the lien—believes levy was made—afterwards placed lien in Sheriff's hands, and had one bale of cotton seized at Abbeville Court House in the depot. Has never received any money from Sheriff from sale of cotton, and the debt secured by the lien is still unpaid.

"The Court held that William Sprouse could give no lien which would affect the prior rights of the plaintiff to his share of the crop; that the lien could affect only such right as Sprouse had, and could not touch plaintiff's share.

"Decree for plaintiff as follows:

"Decree for the plaintiff for the sum of sixty dollars, with interest from 1st January, 1873, without costs. This decree to decide the right, and plaintiff has leave to recover money from the party having the same."

The defendant appealed, and now moved this Court to reverse the decree for the following reasons:

1. Because the presiding Judge erred in holding that the plaintiff, under his contract with Sprouse, acquired any such interest in the crop made by the latter, or in any portion of it, as would give him such right of property thereto as would exclude the defendant's lien.

2. Because it was error to suppose that at the time the lien was given to the defendant, the contract already made between Sprouse and the plaintiff had vested in the latter any title whatever to "*the share*" which he should be entitled at the end of the year to receive for the rent. *Planting, cultivation, severance and delivery* were all necessary to make such title; and before either was done the lien intervened.

3. Because, if there was actual delivery to the plaintiff of a portion of the crop, such portion, before delivery, was subject to the operation of the lien, which was paramount to all other claims, and preferred to all other liens, existing or otherwise, to the extent of the advance or advances made under such agricultural lien.

*Perrin* and *Cothran*, for appellant.

*Thomson*, contra, cited *Bird* vs. *Muhlenbrink*, 1 Rich., 99; 3 Bouv. Inst., p. 63, § 2517. A lien is not, in strictness, either *jus in*

*re* or *jus ad rem*, but it is simply a right to possess and retain property until some charge attaching to it is paid or discharged.—1 Story. Eq., § 506; Cross on Lien, 2. Possession is indispensable to complete the right.—Cross, 31, 36, 38, 42; 3 Bouv. Inst., p. 66, § 2521–2. There is no lien, properly speaking, under the Act, until seizure, and the right of seizure can be made only on the land for the cultivation of which the supplies have been furnished.—Arch. Land. & Ten., 153; 3 Kent Com., 482 and note; 3 Bouv. Inst., p. 41.

May 15, 1873. The opinion of the Court was delivered by

Moses, C. J. The nature and extent of the lien out of which the claim of the appellant arises must be determined by the force of the Act creating it. If it changes the character and consequences of a lien as understood at common law, or as arising in equity from the application of principles peculiar to the administration of justice in that jurisdiction, the Court is bound to accord to it all the effect which the Legislature proposed by their enactment. The following is the provision as found on page 511 of the General Statutes, Section 55: "If any person or persons shall make any advance or advances, either in money or supplies, to any person or persons who are engaged, or are about to engage, in the cultivation of the soil, the person or persons so making such advance or advances shall be entitled to a lien on the crop which may be made during the year upon the land in the cultivation of which the advances so made have been expended, in preference of all other liens existing, or otherwise, to the extent of such advance or advances, provided an agreement in writing, &c." It was impossible to have used words giving a more exclusive right to the party making the advances. A lien on the crop by an agreement in writing, recorded according to the prescribed requisitions, was to have "a preference of all other liens existing, or otherwise, to the extent of such advance or advances." It is not denied that all the conditions of the Statute were complied with, and the only question that is raised is as to its effect on the agreement with Visanska in regard to the rent of the land.

According to the testimony of Link, "the contract was, that Visanska should have one-fourth of all that was made. Sprouse was to pay V. from the first making of the crop." Did this agree-

ment vest V. with any title to the first fourth of the crop? Was it any more than a promise to pay in "the first makings" of the crop instead of money? The lien of the appellant bound the whole in preference to all other liens. It is not necessary to enquire how far the Act might fail in its operation as to a valid pre-existing lien having binding efficacy in the nature of a contract, for it is not perceived that V. held any lien on the share to which he sets up a right. Whatever may be the nature of his claim, it is, in no point of view, a lien. This is generally understood to be a right to retain property until some charge attaching to it is paid or discharged, but the Legislature by this Act, so far as it extends, has changed the common law incidents of a lien, and really constituted it a *jus in re,* or a *jus ad rem.*

The respondent had no title to any portion of the crop. He was neither a joint tenant or tenant in common with Sprouse.—*Rogers* vs. *Collier,* 2 Bail., 581; *State* vs. *Gay,* 1 Hill, 364.

It is objected "that the right of seizure under the lien can be exercised only on the land for the cultivation of.which supplies have been provided." This would be giving a very narrow construction to the Act—destructive, to a great extent, of the benefit it intended for the person making the advances, and not supported by its terms.

Its design was to promote the agricultural interests of the State by encouraging the cultivation of lands, which would otherwise be unproductive for the want of supplies to support the labor which could be readily furnished. A construction should be given to it which would suppress the mischief and promote the remedy. Its language, however, shews that the seizure was to be allowed when the party " was about to sell or dispose of his crops, or in any other way is about to defeat the lien." So, to construe the Act as to hold that it loses its efficacy whenever the products of the crop are removed from the land which yielded them, would defeat its design, and offer an inducement to its evasion by the party who had enjoyed the benefit of the advances to the entire loss and prejudice of the holder of the lien.

It is considered a proper occasion to say, that in this as in various other instances where the trial is by the Court, the provisions of Section 291 of the Code of Procedure (General Statutes, 637,) are not conformed to. By its requirement upon the trial of a question of fact, the decision must contain a statement of the facts found,

and the conclusion of law separately. Here there is neither. That the defendant claimed under a formal lien is not stated as a conclusion of fact, and on this his defense rested. The proof of such lien is not set forth, although its existence is shewn by the evidence, and the judgment of the Court on the law gives preference to the supposed claim of the plaintiff. An adherence to the course demanded by the Code would bring more distinctly to view the points on which we are to pass, and we trust hereafter that there will be no departure from the required mode.

The motion to set aside the judgment of the Circuit Judge is granted, and the case remanded to the Circuit Court for the County of Abbeville.

*Wright*, A. J., and *Willard*, A. J., concurred.